## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **OTIS L. BRADLEY, JR., Deceased, by and Through TIMOTHY KING, Special Administrator, and LaTASHA BRADLEY, Heir of Decedent,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**UNITED STATES OF AMERICA, DR. KRISTINE AULEPP, AMBER MCCAFFERTY, DR. JASON CLARK, JASON TROLL, JUSTIN ALEXANDER, CLAUDE MAYE, JANE DOE & JOHN DOE,**<br><br>**Defendants.** | **Case No. 16-1435-EFM-GLR** |

### <u>MEMORANDUM AND ORDER</u>

Otis L. Bradley, Jr., by and through Timothy King, the special administrator of his estate, and LaTasha Bradley, Mr. Bradley's wife and heir, bring this action against the United States of America, Dr. Kristine Aulepp, Amber McCafferty, Dr. Jason Clark, Jason Troll, Justin Alexander, Claude Maye, and two Jane and John Doe Defendants following the death of Mr. Bradley, a former inmate at the United States Penitentiary at Leavenworth, Kansas ("USP Leavenworth"). Plaintiffs assert the following claims in their Amended Complaint (ECF 8): (1) *Bivens* claim for violations of rights under the United States Constitution; (2) wrongful death pursuant to the Federal Tort Claims Act ("FTCA"); (3) survival claim for personal injuries pursuant to the FTCA; and (4) breach of duty to provide reasonable care pursuant to the FTCA. This matter comes before the Court on Plaintiffs' Motion to Expedite Discovery (ECF 3). The motion is fully briefed and the Court is prepared to rule. For the reasons stated below, the Court denies Plaintiffs' motion.

## I.     Factual Background

The following factual allegations are taken from Plaintiffs' Amended Complaint.  Mr. Bradley was incarcerated at USP Leavenworth from mid-2014 until early 2015, pursuant to his conviction as a felon in possession of a firearm.  Defendant Dr. Kristine Aulepp performed an initial health screening on Mr. Bradley on May 21, 2014, which showed no signs of illness or disease.  David Campbell, ARNP, completed Mr. Bradley's physical on June 3, 2014, which also showed no chronic health issues.  Mr. Bradley was placed in solitary confinement, or "SHU," in early December 2014, following an altercation with a corrections officer.  On December 15, 2014, Mr. Bradley collapsed in his cell.  He was transferred to St. Luke's Cushing Hospital in Leavenworth, Kansas, where he presented with abdominal pain, facial and hand numbness, drooling, and eye twitching.  Mr. Bradley had abnormal lab results.  Dr. Chrstopher Warholic noted: "Discuss with jail medical need for further evaluation such as neurology evaluation or possible need for holter monitor." Mr. Bradley was transported back to USP Leavenworth on December 16, 2014.  In a follow-up appointment Dr. Aulepp noted "no further intervention needed."  Mr. Bradley's physical condition continued to deteriorate throughout December 2014, with no further evaluation or intervention by Dr. Aulepp or any other USP Leavenworth medical personnel or corrections workers.  Additionally, from December 2014 through January 11, 2015, Mr. Bradley had contact with Defendants McCafferty, Dr. Clark, Troll, Alexander, and Maye.  Plaintiffs allege these Defendants did nothing to address his medical condition observed during the December 2014 hospitalization.

Mr. Bradley continued to experience medical issues in early January 2015.  He reported to the prison medical clinic on January 11, 2015, exhibiting blood in his vomit and extreme pain in his abdomen.  He was again transported to St. Luke's Cushing Hospital that same day.  As of

January 11, 2015, Mr. Bradley had been ill for nearly a month.  He had lost 20 pounds in the past

month, had not had a bowel movement for more than a week, and had been nauseous for many

days.  He was diagnosed with gallstones, pancreatitis, and diabetes.

On January 12, 2015, Mr. Bradley was transferred to St. Luke's Hospital in Kansas City,

Missouri, where he remained until his death from pancreatitis on February 6, 2015.  Mr.

Bradley's family was notified on February 4, 2015, that he was on life support and they needed

to come to St. Luke's Hospital to "make decisions."  Until this time, Mr. Bradley's family had no

knowledge that he was ill.  Plaintiffs allege Defendants did not provide Mr. Bradley with

reasonable or competent care until he was repeatedly vomiting blood on January 11, 2015.

## II.    Procedural History

Following his death, Mr. Bradley's estate was opened on May 20, 2015.  Medical records

were requested from the treating hospital immediately following the opening of the estate, but

the hospital did not provide these records to counsel for more than three months.  Plaintiffs'

counsel filed a Freedom of Information Act ("FOIA") request on August 24, 2015, attempting to

obtain prison records relevant to the investigation into Mr. Bradley's death.  Counsel for the

Federal Bureau of Prisons ("BOP") responded that the request was "complicated" and could take

up to nine months to process.  Plaintiffs contend that their counsel called and asked that the

request be expedited, while Defendants assert that Plaintiffs' counsel did not request that the

FOIA request be expedited.[1]

The BOP responded to Plaintiffs' FOIA request on December 9, 2015, by providing

responsive records.  Included in these records were 299 pages of documents released in full and

eighteen pages released with some redactions.  The BOP withheld 29 pages of documents in their

---

[1]ECF 6 at 3; ECF 12 at 3.

entirety.  The BOP maintains that only documents containing protected third-party information were redacted, and that Plaintiffs' counsel received the majority of documents related to Mr. Bradley, including his Inmate Central File, his Medical File, and his Psychology File.  Plaintiffs maintain that while some of these documents were helpful, Plaintiffs had already received many of them from St. Luke's Hospital, and others did not specifically address the issues involved in this case.

On May 12, 2016, Plaintiffs' counsel filed an administrative demand under the FTCA, and served the demand on the BOP.  The 180-day deadline for the BOP to investigate the claim expired on November 22, 2016 without any documents being provided to Plaintiffs or Plaintiffs' counsel as part of the investigation into the demand.

Plaintiffs filed this lawsuit on December 15, 2016.  In an effort to proceed with their *Bivens* claim and identify potential defendants relevant to this claim, Plaintiffs served BOP counsel with a series of interrogatories and requests for production.  Plaintiffs' discovery requests sought information regarding corrections officers, medical staff, and other employees who interacted with Mr. Bradley, information concerning inmates located in cell blocks near Mr. Bradley, information regarding USP Leavenworth medical clinic staff, and documents related to Mr. Bradley's medical requests, treatments, and interactions with USP Leavenworth correctional workers and medical personnel.[2]   Defendants did not respond to Plaintiffs' discovery requests. Plaintiffs filed the instant motion on December 28, 2016.

On February 6, 2017, Plaintiffs filed an Amended Complaint.  Using information from the documents produced in response to the FOIA request, Plaintiffs added five Defendants to this action.

---

[2]ECF 3-1; ECF 3-2.

## III.    Discussion

Plaintiffs move the Court for an order to expedite discovery of the requested information, as discussed above.  Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by [Federal Rule of Civil Procedure] 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."[3]  This is not a proceeding exempted from initial disclosure and the parties have not stipulated to early discovery.  Additionally, the parties have not participated in a Rule 26(f) conference.  Thus, any early or expedited discovery is permitted only by order of this Court.

This Court has previously recognized two factor tests that guide the determination of whether to permit expedited discovery.  The first, and more stringent, standard requires the plaintiff to demonstrate

> (1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of the irreparable injury; and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.[4]

The second, more liberal analysis—typically referred to as the "reasonableness" or "good cause" test—looks to the following factors to determine the reasonableness of expedited discovery: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made."[5]

---

[3]Fed. R. Civ. P. 26(d).

[4]*Sunflower Elec. Power Plant Corp. v. Sebelius*,  No. 08-2575-EFM-DWB, 2009 WL 774340, at *2 (D. Kan. Mar. 20, 2009) (quoting *Disability Rights Council of Greater Washington v. Washinton Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006)).

[5]*Id.* (quoting *Disability Rights Council*, 234 F.R.D. at 6).

The Court in the District of Kansas has recently applied the reasonableness or good cause test, and this Court will use that test.[6]

The Court finds that the reasonableness factors above do not favor early discovery.  First, no motion for preliminary injunction is pending, and Plaintiffs do not seek expedited discovery in relation to requesting emergency relief.  Rather, Plaintiffs seek expedited discovery to allow them to further amend their complaint to add potential *Bivens* defendants.   Second, while Plaintiffs' discovery requests are not unduly broad, they are also not narrowly tailored to the purpose of identifying additional *Bivens* defendants.  Plaintiffs seek information related to other nearby inmates, "every document" in USP Leavenworth's "prisoner database" that pertains to Mr. Bradley, and "every request for medical treatment" that Mr. Bradley submitted while at USP Leavenworth.[7]  These and other requests go beyond mere identification of additional defendants. They instead venture into the merits of this case.

Third, as explained above, Plaintiffs' stated purpose in seeking early discovery is to amend their Amended Complaint to add potential *Bivens* defendants.  Plaintiffs previously filed their Amended Complaint, using information obtained through their FOIA request to name five additional Defendants.  As they explain in their reply, "Plaintiffs added those federal employees who were medical providers who observed and failed to treat Mr. Bradley in the final weeks of his incarceration at Leavenworth."[8]  Thus, Plaintiffs have had success in using informal, pre-lawsuit investigative strategies to name otherwise unidentified Defendants.  Many of the documents and much of the information Plaintiffs seek in their discovery requests go to information that appears to have been provided in response to the FOIA request.  Plaintiffs seek

---

[6]*Id.* at 3; *SC Realty v. MTC Cleaning, Inc.*, No. 15-2315, 2015 WL 11089660 (D. Kan. Feb. 19, 2015) (applying reasonableness test).

[7]ECF 3-1; ECF 3-2.

[8]ECF 12 at 6.

"all documents from Leavenworth's records for the time period in December 2014 through January 2015 when Mr. Bradley was in 'SHU' and twice transferred to hospitals outside of the Defendant's facility due to severe and ultimately fatal medical illness."[9]  But Plaintiffs state that they have already included in their Amended Complaint "those federal employees who were medical providers and failed to treat Mr. Bradley" during this time period.  Additionally, to the extent the early discovery would supposedly reveal additional *Bivens* Defendants, beyond those already named in the Amended Complaint, Plaintiffs do not elaborate on why it is necessary at this time to specifically name those defendants.[10]  Because much of the information Plaintiffs seek was apparently produced in response to the FOIA requests, Plaintiffs have successfully used that information to amend their Complaint, and Plaintiffs have not provided a rationale for the urgency in naming additional Defendants, the Court finds that the purpose of the request is not a compelling reason for opening discovery in advance of the normal process.

Fourth, Defendants argue that responding to the discovery requests would be burdensome.  Defendants note that Plaintiffs seek responses to their discovery requests within fourteen days of being served with the requests, which represents a faster turnaround than the typical 30 days provided for in the Federal Rules of Civil Procedure.[11]  Additionally, Defendants assert that no protective order is in place, and that responding to the requests would entail searches of many records and databases, as well as review of the documents for privilege and privacy issues.  Plaintiffs do not question that responding would be burdensome, but instead suggest that Defendants have known since July 2015 that Plaintiffs seek the information at issue.

---

[9]ECF 12 at 7.  As explained above, the discovery requests are broader than the time period from December 2014 through January 2015.

[10]*See Sunflower Elec.*, 2009 WL 774340, at *4 ("while Sunflower also urges that it needs this discovery to evaluate a possible amendment to its complaint or motion for preliminary injunction, it does not expound on why this is necessary at this time.").

[11]Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A).

The Court credits Defendants' assertion that responding to the discovery requests would impose a significant burden, especially in light of the requested fourteen-day response window. This burden weighs in favor of proceeding with discovery as more commonly contemplated by the Federal Rules.

Finally, the Court recognizes that Plaintiffs made their request for expedited discovery significantly in advance of the typical discovery process. Indeed, Plaintiffs filed their motion just thirteen days after they filed their Complaint, but were later able to amend their Complaint by adding *Bivens* Defendants without resorting to expedited discovery.[12]

The Court finds that the factors discussed above weigh in favor of adhering to the typical discovery process. There is no motion for preliminary injunction pending. Plaintiffs do not seek emergency relief. Additionally, the stated purpose of the request for expedited discovery— naming additional defendants—is not particularly compelling, given that Plaintiffs have already amended their Complaint to add *Bivens* Defendants. The discovery requests are broad. The burden in responding to them at this early stage would be unnecessarily great. Finally, Plaintiffs filed their motion almost immediately after initiating this action, well in advance of the normal discovery process and before they were able to successfully file an Amended Complaint without the use of expedited discovery. For these reasons the Court finds no need for expedited discovery, and in any event any need for it is outweighed by the considerations discussed above. Accordingly, the Court denies Plaintiffs' motion for expedited discovery.

---

[12]ECF 3.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion to Expedite

Discovery (ECF 3) is **denied**.

Dated: April 3, 2017

*s/Gerald L. Rushfelt*
Gerald L. Rushfelt
U.S. Magistrate Judge