# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

OTIS L. BRADLEY, JR., Deceased,
By and Through TIMOTHY KING,
Special Administrator, and
LaTASHA BRADLEY, Heir of Decedent,

*Plaintiffs,*

vs.

Case No. 16-1435-EFM-TJJ

UNITED STATES OF AMERICA, DR.
KRISTINE AULEPP, AMBER
MCCAFFERTY, DR. JASON CLARK,
JASON TROLL, JUSTIN ALEXANDER,
CLAUDE MAYE, JANE DOE & JOHN
DOE,

*Defendants.*

## MEMORANDUM AND ORDER

Otis Bradley, Jr., by and through Timothy King, special administrator of his estate, and

LaTasha Bradley, Otis Bradley's wife and heir, bring this suit against the United States of

America, Dr. Kristine Aulepp, Amber McCafferty, Dr. Jason Clark, Jason Troll, Justin

Alexander, Claude Maye, and two unknown individuals for failing to provide adequate medical

care to Bradley while he was incarcerated at the United States Penitentiary in Leavenworth,

Kansas ("USP Leavenworth").  Plaintiffs assert four claims in their Amended Complaint:  (1) a

*Bivens* claim for violation of Bradley's Eighth Amendment rights; (2) a wrongful death claim

under the Federal Tort Claims Act ("FTCA"); (3) a survival claim for personal injuries under the FTCA; and (4) a breach of duty to provide reasonable care under the FTCA.

In response to Plaintiffs' Amended Complaint, Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 25).[1] Plaintiffs responded to Defendants' motion, but also filed a Motion to Defer Ruling on Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 39) under Federal Rule of Civil Procedure 56(d). Because Defendants' motion is a hybrid motion, the Court will first consider its Motion to Dismiss. As explained below, the Court grants in part and denies in part this motion. Then, the Court will turn to Plaintiffs' motion under Rule 56(d) to defer ruling on the summary judgment aspect of Defendants' motion. Because the Court concludes that it should grant this motion, it denies Defendants' motion for summary judgment without prejudice.

## I.     Factual and Procedural Background[2]

Otis Bradley was incarcerated at USP Leavenworth from mid-2014 through early 2015 as a result of his conviction in the United States District Court for felon in possession of a firearm. Defendant Dr. Aulepp conducted an initial health screen for Bradley on May 21, 2014. The results did not indicate that he was ill or had any congenital diseases. Another USP Leavenworth employee conducted a health screen on Bradley on June 3, 2014, which also showed no chronic health issues.

---

[1] The Court disfavors hybrid motions such as the one Defendants filed because the standard governing a motion to dismiss is drastically different from the standard governing a motion for summary judgment. Indeed, Defendants' give lip service to its Fed. R. Civ. P. 12(b)(6) motion by stating *in a footnote* that Plaintiffs have not alleged a violation of a constitutional right and combining their arguments concerning Plaintiffs' allegations in the same section as those referring to evidence outside the Amended Complaint.

[2] In accordance with the standards governing Rule 12(b)(6) motions, the factual background is taken from Plaintiffs' Amended Complaint and accepted as true.

In early December 2014, Bradley was placed in solitary confinement or "SHU" after he exchanged words with a corrections officer. On December 15, he collapsed in his cell. He was transferred to St. Luke's Cushing Hospital in Leavenworth, Kansas, where he presented with abdominal pain, facial and hand numbness, drooling, and eye twitching. His lab results were abnormal. Dr. Christopher Warholic reported: "Discuss with jail medical need for further evaluation such as neurology evaluation or possible need for holter monitor." On December 16, Bradley was transported back to USP Leavenworth. In a follow-up appointment with Defendant Aulepp, she noted: "No further intervention needed."

Bradley's health continued to deteriorate throughout December without further intervention from Defendant Aulepp, other Leavenworth medical personnel, or corrections workers. In addition, he continued to have contact with Defendants McCafferty, Alexander, Clark, and Troll, all of whom are medical personnel at USP Leavenworth, from December 16 through January 11, 2015. Plaintiffs allege that none of these individuals provided sufficient care to ensure that Bradley's condition was appropriately treated after his hospitalization. Plaintiffs also allege that Defendant Maye, the warden at USP Leavenworth during the relevant time period, did not ensure that Bradley's condition was treated appropriately.

Bradley continued to be ill during January 2015. From January 4 to January 11, he did not eat due to extreme abdominal pain, nausea, and vomiting. USP Leavenworth personnel did not perform an evaluation. As of January 11, 2015, Bradley had been ill for almost a month. He had lost 20 pounds, was nauseous for many days, and had not had a bowel movement in over a week.

On January 11, 2015, Otis reported to the prison medical clinic with blood in his vomit and extreme abdominal pain. He was transported to St. Luke's Cushing Hospital, where he was

diagnosed with gallstones, pancreatitis, and diabetes. The next day, he was transferred to St. Luke's Hospital in Kansas City, Missouri. He remained there until his death from pancreatitis on February 6, 2015. Bradley's family was notified on February 4 that he was on life support and they needed to come to the hospital to "make decisions." Until that time, his family did not know that he was ill. Plaintiff alleges that Bradley was allowed to become so ill at USP Leavenworth that his condition upon arrival at the hospital prevented any treatment from being effective.

Following Bradley's death, Plaintiffs filed a Freedom of Information Act ("FOIA") Request attempting to obtain prison records related to his death. The Bureau of Prisons ("BOP") responded to Plaintiffs' request on December 9, 2015, proving 299 pages of documents released in full and 18 pages released with some redactions. The BOP withheld 29 documents in their entirety. The BOP maintains that Plaintiff received the majority of documents related to Bradley, including his Inmate Central File, his medical file, and his Psychology File. Plaintiffs maintain that while some of these documents were helpful, Plaintiffs had already received many of them from St. Luke's Hospital, and others did not specifically address the issues involved in the case.

On May 12, 2016, Plaintiffs' counsel filed an administrative demand under the FTCA and served the demand on the BOP. The 180 day deadline for BOP to investigate the claim expired on November 22, 2016, without any documents being provided.

Plaintiffs filed this lawsuit on December 15, 2016, against Defendants United States, Dr. Aulepp, and two unknown individuals. On February 16, 2017, Plaintiffs filed an Amended Complaint. Using information from the documents produced in response to the FOIA request, Plaintiffs added McCafferty, Dr. Clark, Troll, Alexander, and Maye as Defendants. Plaintiffs'

Amended Complaint asserts a *Bivens* claim against the six individual Defendants for violation of his Eighth Amendment rights and three tort claims against the United States under the FTCA. In response, Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment arguing that the individual Defendants are entitled to qualified immunity and that Plaintiffs did not administratively exhaust certain aspects of their FTCA claims. Plaintiffs responded to Defendants' motion, and also filed a Motion to Defer Ruling on Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Plaintiffs argue that they do not have sufficient facts to justify its opposition to Defendants' summary judgment motion. Defendants then filed a Motion to Stay Discovery, which the Court denied. In this Order, Magistrate Judge James specifically noted that Plaintiffs may conduct discovery limited to the threshold issue of qualified immunity and on matters bearing on Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment. The docket does not indicate whether the parties have conducted any discovery since this Order.

## II. Defendants' Motion to Dismiss

### A. Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim where the plaintiff has failed to state a claim upon which relief may be granted. Upon such motion, the court must decide "whether the compliant contains 'enough facts to state a claim to relief that is plausible on its face.' "[3] "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support

---

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493, F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

for these claims."[4]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[5]  In determining whether a claim is facially plausible, the court must draw on its judicial experience and common sense.[6]  All well-pleaded facts in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff.[7]  Allegations that merely state legal conclusions, however, need not be accepted as true.[8]

Under Rule 12(b)(1), a court may dismiss a complaint based on lack of jurisdiction over the subject matter of the complaint.  Because federal courts are courts of limited jurisdiction, they presume a lack of jurisdiction.[9]  Plaintiffs bear the burden of alleging sufficient facts to overcome this presumption.[10]

**B.    Analysis**

Defendants ask the Court to dismiss Plaintiffs' claims for two reasons.  First, Defendants argue that Plaintiffs' *Bivens* claim should be dismissed for failure to state a claim upon which relief can be granted because they are entitled to qualified immunity and Plaintiffs' Amended Complaint does not state that Defendants violated a constitutional right.  Second, Defendants argue that the Court does not have subject matter jurisdiction over certain aspects of Plaintiffs'

---

[4] *Ridge at Red Hawk*, 493 F.3d at 1177.

[5] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

[6] *Iqbal*, 556 U.S. at 678.

[7] *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

[8] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[9] *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999).

[10] *Id.*

FTCA claims because Plaintiffs did not fully exhaust their administrative remedies. The Court will consider each of these arguments below.

### 1. Failure to State a Claim

Plaintiffs allege Defendants Aulepp, Clark, Maye, McCafferty, Alexander, and Troll violated Bradley's Eighth Amendment right to be free from cruel and unusual punishment due to inadequate medical care. In response, Defendants assert the defense of qualified immunity. Summary judgment is the "typical vehicle" for asserting a qualified immunity defense, but the Court will also review it on a motion to dismiss.[11] When a defendant asserts a qualified immunity defense in a motion to dismiss, the defendant subjects himself to a more challenging standard of review.[12] This standard requires the plaintiff to plausibly allege that (1) the defendant deprived the plaintiff of a constitutional right; and (2) that right was clearly established at the time.[13] The court may consider either prong of this two-part inquiry in any order.[14] If one aspect is not satisfied, then qualified immunity is appropriate and no further inquiry need be undertaken.[15]

### a. Whether There Was a Violation of a Constitutional Right

The Eighth Amendment protects prisoners from "deliberate indifference to serious medical needs."[16] Prison guards and doctors may thus be held liable for "indifference . . .

---

[11] *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).

[12] *Choate v. Lemmings*, 294 F. App'x 386, 391 (10th Cir. 2008) (citing *Petersen*, 371 F.3d at 1201)).

[13] *Petersen*, 371 F.3d at 1202.

[14] *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

[15] *See id.* at 242, 244 (analyzing only whether the defendants violated clearly established law).

[16] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

manifested . . . in their response to the prisoner's needs or by . . . intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed."[17]

To state a denial of medical care claim, a plaintiff must satisfy an objective and subjective component.[18] Under the objective component, the plaintiff must allege that the deprivation was sufficiently serious.[19] "[A] medical need is sufficiently serious if it is one . . . that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[20] Under the subjective component, the plaintiff must allege that the prison official was deliberately indifferent to a serious medical need.[21] A plaintiff sufficiently alleges a culpable mindset when the facts alleged show that the prison "official acted or failed to act despite his knowledge of a substantial risk of serious harm."[22] In other words, a prison official acts with a culpable state of mind when he "knows of and disregards an excessive risk to inmate health or safety."[23] "[T]he official must be both aware of the facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference."[24]

       i.       Defendants Aulepp, McCafferty, Alexander, Troll, and Clark

---

[17] *Id*. at 104-05.

[18] *Estate of Booker v. Gomez*, 745 F.3d 405, 430 (10th Cir. 2014).

[19] *Id*. (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)).

[20] *Id*.

[21] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[22] *Id*. at 842.

[23] *Id*. at 837.

[24] *Id*.

Plaintiffs' Amended Complaint alleges sufficient facts to state an Eighth Amendment claim against Defendants Aulepp, McCafferty, Alexander, Troll, and Clark. With regard to the objective component, Plaintiffs allege that Bradley requested medical treatment after returning to USP Leavenworth from the hospital on December 16 until January 11, 2015. Plaintiffs allege that during that period, Bradley was ill, lost 20 pounds, was nauseous for many days, and had not had a bowel movement for over a week. Plaintiffs further allege that Defendants allowed Bradley to grow so ill that despite St. Luke's treatment of him for several weeks, he died. Accepting Plaintiffs' Amended Complaint as true, Bradley's condition was sufficiently serious that even a lay person in this situation would recognize the need for a doctor's intervention. Thus, Plaintiff has satisfied the objective component.

Plaintiffs' allegations are not nearly as specific with regard to the subjective component, but they are sufficient to state an Eighth Amendment claim against Defendants McCafferty, Alexander, Troll, Clark, and Aulepp. Plaintiffs allege that (1) Defendants had contact with Bradley from December 16 to January 11; (2) Bradley's physical condition continued to deteriorate from December 2014 to early January 2015; and (3) from January 4 through January 11, 2015, Bradley did not receive any medical treatment even though he was not eating and suffering extreme abdominal pain, nausea, and vomiting. Plaintiffs further allege that these Defendants did not provide any treatment to Bradley until he began repeatedly vomiting on January 11. In addition, with regard to Defendant Aulepp, Plaintiffs allege that she did not follow up on Dr. Warholic's notes that Bradley needed further evaluation after returning from the hospital on December 16 and that she did not further evaluate or treat Bradley when his condition continued to worsen during December 2014. Plaintiffs have sufficiently alleged that

Defendants knew of Bradley's medical condition and disregarded it. Therefore, they have satisfied the subjective component of an Eighth Amendment claim.

ii.     Defendant Maye

Plaintiffs' Amended Complaint does not allege sufficient facts to state an Eighth Amendment claim against Defendant Maye. Defendant Maye was the warden at USP Leavenworth at the time of Bradley's incarceration. As warden, he is not liable for any of the alleged constitutional violations of his employees under the doctrine of respondeat superior.[25] Indeed, to hold a Defendant Maye liable under *Bivens*, the Eighth Amendment violation must be traceable to Defendant Maye's own actions.[26] Here, Plaintiffs do not allege that Bradley advised Defendant Maye of his medical condition or any issue concerning his medical care. Instead, Plaintiffs merely assert that Maye failed to assist Bradley and that he was deliberately indifferent to Bradley's need for medical care. These conclusory allegations do not satisfy the subjective component of an Eighth Amendment claim. Thus, Defendant Maye is entitled to qualified immunity and is dismissed from this lawsuit.

b.     Whether the Constitutional Right Was Clearly Established

The Court will defer ruling on the second prong of the qualified immunity analysis until it addresses Defendants' motion for summary judgment. The only argument Defendants make in their motion to dismiss is that Plaintiffs have not sufficiently alleged that Defendants violated a constitutional right. Furthermore, when addressing this prong of the qualified immunity analysis, both parties refer to documents outside the pleadings in their arguments. Therefore, the Court declines to address this portion of the qualified immunity analysis at this time.

---

[25] *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 676).

[26] *Id.*

2.    *Failure to Exhaust Administrative Remedies*

Defendants move for the dismissal of all claims Plaintiffs asserted under the FTCA that were not administratively exhausted through Administrative Claim No. TRT-NCR-2016004492. Specifically, the United States argues that Plaintiffs have not exhausted their claims related to paragraphs 48-49 and 80(e) of the Amended Complaint. Paragraphs 48 and 49 allege that USP Leavenworth staff advised Bradley's family that they were not allowed to notify families about an inmate's severe medical illness until the inmate was dead and that Defendant Maye supervised the correctional officers and implemented the policy that prevented families from having contact with an inmate when suffering life threatening injuries and illnesses. Paragraph 80(e) alleges that the United States breached a duty to provide reasonable care by failing to properly instruct, supervise, train, or control corrections officers to communicate health related emergencies, observe and report on medical conditions, and provide information to medical staff in a timely manner for proper medical care of inmates. In response, Plaintiffs argue that its administrative claim provided sufficient notice to the United States of the facts and circumstances underlying their claims.

The FTCA is a waiver of sovereign immunity that authorizes suits against the United States for damages for certain torts committed by federal employees acting within the scope of their employment.[27] The FTCA generally provides that the United States is liable, to the same extent as a private party, "for injury or loss of property, or personal injury or death caused by the

---

[27] 28 U.S.C. § 1346(b); *Berkovitz v. United States*, 486 U.S. 531, 535 (1988).

negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."[28]

To bring a tort claim under the FTCA against the United States, that claim must be presented to the appropriate federal agency and be finally denied by that agency.[29]  The filing of an administrative claim is a jurisdictional requirement, and the failure to do so, leaves the Court without subject matter jurisdiction.[30]  If a claim is not presented to the agency before a civil judicial action is filed, the case must be dismissed.[31]

The Tenth Circuit applies a pragmatic test in determining whether an administrative claim is sufficiently exhausted under the FTCA.  This test asks "whether the claim's language serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct."[32]  In addition, "a claim should give notice of the underlying facts and circumstances rather than the exact grounds upon which [the claimant] seeks to hold the government liable."[33]  "[T]he FTCA's notice requirements should not be interpreted inflexibly."[34]

The Court first turns to the allegations in paragraphs 48 and 49 of the Amended Complaint.  As an initial matter, the Court notes that these allegations are not "claims" but facts

---

[28] 28 U.S.C. § 1346(b); *see also* 28 U.S.C. § 2674.

[29] 28 U.S.C. § 2675(a); *see also Morrison v. Kache*, 576 F. App'x 715, 717 (10th Cir. 2014).

[30] *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 967 (10th Cir. 1994).

[31] *Williams v. U.S. Post Office*, 866 F. Supp. 1320, 1321 (D. Kan. 1994).

[32] *Staggs v. United States ex rel. Dept. of Health & Human Servs.*, 425 F.3d 881, 884 (10th Cir. 2005) (quotation marks and citation omitted).

[33] *Id.* (citing *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 853 (10th Cir. 2005)).

[34] *Estate of Trentadue*, 397 F.3d at 853.

relevant to Plaintiffs' claims. The Court is not clear to which claim or claims these allegations pertain, and the parties do not provide this information in their briefs. To the extent these facts support Plaintiff's survival claim under the FTCA, the Court concludes that they have been administratively exhausted. Attached to Plaintiffs' administrative complaint is a 19 page letter setting forth the facts of the case, a summary of Plaintiffs' claims, and the damages Plaintiffs seek for Bradley's death. In the factual section of the letter, Plaintiffs state that USP Leavenworth officials did not officially notify Bradley's family that he was critically ill until February 4, 2015—three and half weeks after he was transferred to the hospital. The facts further state that because the Warden had not called them to inform them that Bradley could have visitation, the family still believed at this time that he was in solitary confinement for disciplinary problems. They were allegedly shocked when they arrived at the hospital to find him in a coma, intubated, and brain dead. In the damages section of the letter, Plaintiffs state that they will seek damages for Bradley's conscious pain and suffering and emotional distress, describing it as follows:

> There is no question that [Bradley] felt conscious pain, suffered and endured an extensive illness prior to succumbing to his pancreatitis caused by gall stones. This aspect of the claim traumatizes his family the most. That as he lay dying in a hospital bed, suffering from sepsis and other illnesses, he suffered alone, without the comfort and care of his loved ones.

These statements are certainly not identical to paragraphs 48 and 49 in the Amended Complaint. They do not specifically mention any policy that the Warden may or may not enforce regarding when prison officials may notify families of an inmate's illness. However, they do allege that Bradley's family was not notified by USP Leavenworth officials of his illness until he was essentially in a coma and brain dead. This is sufficient to put the United States on notice that Plaintiffs may bring a survival action under the FTCA based on any alleged pain and

-13-

suffering Bradley experienced by suffering a prolonged illness and dying without his family by his side.

To the extent the allegations in paragraphs 48 and 49 fall under paragraph 80(e) or otherwise support Plaintiffs' reasonable care claim, they have not been administratively exhausted. Nothing in the letter attached to the administrative complaint indicates that there was a policy that prevented USP Leavenworth guards from contacting an inmate's family about a severe medical illness. And nothing in the letter indicates that Defendant Maye implemented this policy or supervised the correctional officers' execution of it.

Looking solely at the allegations in paragraph 80(e), the Court concludes that they also have not been administratively exhausted. Plaintiffs have failed to identify any language in their letter indicating that Defendants failed to instruct, supervise, train, or control correctional officers on a continuing basis to communicate health-related emergencies or to observe and report on medical conditions and timely provide information to medical staff. Plaintiffs claim that the letter goes into extreme detail outlining Bradley's medical care and providing a timeline of events relevant to Plaintiffs' theories of liability. While this is true, nothing in the letter mentions the possibility that Bradley's injuries were caused by inadequate training and supervision of USP Leavenworth staff.

Plaintiffs cite *Bethel v. United States*[35] in support of their argument that the letter attached to its administrative complaint contains sufficient information to put the government on notice of its claims. But Plaintiff's reliance on this case is misplaced as it actually supports Defendants' argument that Plaintiffs did not administratively exhaust their claims. In *Bethel*, the Colorado

---

[35] 495 F. Supp. 2d 1121 (D. Colo. 2007).

district court found that the plaintiff's administrative claim, which centered around the alleged negligent treatment of Bethel during surgery, did not put the government on notice of claims related to negligent credentialing and monitoring of the doctor's competency.[36] The court found the case to be analogous to the Tenth Circuit's decision in *Kikumura v. Osagie*.[37] In that case, the Tenth Circuit concluded that a prisoner failed to exhaust administrative remedies for his FTCA claim of "negligent failure to provide adequate training and supervision to staff" because although his administrative claim alleged that he received negligent care while he was ill, it "failed to mention the possibility that his injuries were caused by the inadequate training and supervision of [prison] staff."[38]

The court in *Bethel* also found the Tenth Circuit's decision in *Staggs v. United States*[39] instructive.[40] In *Staggs*, "the plaintiff's administrative claim alleged a 'substantial departure from the standard of care' and 'negligent management of her pregnancy [and] labor.' "[41] The Tenth Circuit concluded that the plaintiff's administrative claim did not contain sufficient facts to raise the possibility of lack of informed consent and thus the district court did not have jurisdiction to hear the claim.[42] The Tenth Circuit noted that "given the length and factual specificity of [plaintiff's] description of her claim without a mention of 'consent' or a suitable

---

[36] *Id*. at 1124.

[37] 461 F.3d 1269 (10th Cir. 2006).

[38] *Bethel*, 495 F. Supp. 2d at 1124 (quoting *Kikumura*, 461 F.3d at 1302) (internal quotation marks omitted).

[39] 425 F.3d 881.

[40] *Bethel*, 495 F. Supp. 2d at 1125.

[41] *Id*. (quoting *Staggs*, 425 F.3d at 884).

[42] *Id*. (citing *Staggs*, 425 F.3d at 885).

synonym, [the agency] could have reasonably concluded that a claim of lack of informed consent was not intended and that an investigation into lack of informed consent was not necessary."[43] Relying on this reasoning, the *Bethel* court similarly concluded that given the length and factual specificity of the plaintiff's administrative claim, the fact that there was no mention of facts relating to the supervision, credentialing, or monitoring of the doctor could lead the government to reasonably conclude that an investigation into these issues was unnecessary.[44]

Like the plaintiffs in *Staggs* and *Bethel*, Plaintiffs went into great detail in the letter attached to their administrative claim regarding Bradley's medical care. But, their letter does not contain any language indicating that USP Leavenworth staff failed to instruct supervise, train, or control corrections officers regarding communicating and reporting health-related emergencies and medical conditions. Therefore, the BOP could not have reasonably concluded that an investigation into these claims was necessary. As the court in *Bethel* noted, "[a]lthough the FTCA's notice requirements should not be interpreted inflexibly, neither should an administrative claim place a federal agency on notice of every conceivable legal theory or cause of action that could potentially be brought in relation to an injury described in that claim."[45]

Plaintiffs failed to exhaust their administratively remedies with regard to the allegations set forth in paragraph 80(e), and thus, the Court does not have subject matter jurisdiction over them. In addition, to the extent the facts alleged in paragraphs 48 and 49 fall under paragraph 80(e), or otherwise support Plaintiffs' breach of duty of reasonable care claim, the Court also does not have subject matter jurisdiction over them. The Court notes that Plaintiffs' breach of

---

[43] *Id.* (quoting *Staggs*, 425 F.3d at 885).

[44] *Id.* at 1125.

[45] *Id.* (internal quotation marks and citations omitted).

duty of reasonable care claim is not being dismissed in whole and that the Court continues to have subject matter jurisdiction over the remaining allegations within this claim.

## C.     Conclusion

Overall, the Court concludes that Plaintiffs have met their burden to sufficiently allege the violation of Bradley's Eighth Amendment rights with regard to Defendants Aulepp, McCafferty, Clark, Troll, and Alexander.  Plaintiffs have not met their burden with regard to Defendant Maye.  Therefore, Defendant Maye is entitled to qualified immunity and dismissed from this case.  With regard to Plaintiffs' FTCA claims, the Court does not have subject matter jurisdiction over paragraphs 80(e) or paragraphs 48 and 49 to the extent they support Plaintiffs' breach of duty of reasonable care claim.  The Court does have subject matter jurisdiction over the remaining allegations in Plaintiffs' breach of duty of reasonable care claim and paragraphs 48 and 49 to the extent they fall under Plaintiffs' survival claim.

## II.     Plaintiffs' Motion to Defer Ruling on Defendants' Motion for Summary Judgment

Plaintiffs ask the Court to defer ruling on Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment under Rule 56(d).  Under this rule, when a party "shows by affidavit or declaration, that for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."[46]  Defendants oppose Plaintiffs' Rule 56(d) motion,

---

[46] Fed. R. Civ. P. 56(d).

arguing that Plaintiffs have not met their burden with regard to Defendants' qualified immunity defense.[47]

The Tenth Circuit imposes four requirements on a party seeking relief under Rule 56(d). The party "must specify (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment."[48] This is not a high burden, and affidavits submitted under the rule "are entitled to liberal treatment unless they are dilatory or meritless."[49] However, when a summary judgment motion is based on qualified immunity, the party's affidavit must also "demonstrate a connection between the information he would seek in discovery and the validity of the [defendant's] qualified immunity assertion."[50]

Magistrate Judge James recently issued an Order in this case regarding Defendants' Motion to Stay Discovery. Recognizing that Plaintiffs have received no initial disclosures and have only been provided the documents supporting Defendants' dispositive motion, the Court stated: "[A] court abuses its discretion when it stays discovery and prevents a party from having a sufficient opportunity to develop a factual basis for defending against the [dispositive]

---

[47] Defendants do not argue that Plaintiffs have not met their burden under Rule 56(d) with regard to their FTCA claims. Therefore, the Court grants Plaintiffs' motion with regard to these claims and will not explicitly discuss them here.

[48] *Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016) (quoting *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015)).

[49] *Jones v. City and Cnty. of Denver, Colo.*, 854 F.2d 1206, 1210 (10th Cir. 1988) (citing *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir. 1984)).

[50] *Gutierrez*, 841 F.3d at 908 (quoting *Lewis v. City of Ft. Collins*, 903 F.2d 752, 754 (10th Cir. 1990)).

motion."[51]  Judge James ultimately denied Defendant's motion, explicitly stating that Plaintiffs may "conduct discovery limited to the threshold issue of qualified immunity and on matters bearing on Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment."[52]  Although the Court reviews Plaintiffs' motion under a different standard than a motion to stay discovery, it agrees with Judge James that this is a case where the non-moving party should be able to conduct discovery to adequately respond to a pending dispositive motion.

## A.      Factor One:  Whether or Not There Are Probable Facts Not Available

Plaintiffs claim that there are too many unknowns about what occurred during Bradley's incarceration to fully list the facts that are not currently available, but that they are aware of general categories of information to which they do not have access.  Plaintiffs further explain that additional evidence would show that Defendants were deliberately indifferent to Bradley's medical condition because there is evidence that Defendants were aware his health was deteriorating before January 11 and they did nothing about it.  In response, Defendants argue that "these general and conclusory references" do not satisfy Rule 56(d) and that the facts Plaintiffs seek are speculative.

A party is not required to definitively prove the existence of facts sought to satisfy the first factor.[53]  "All that is required is that the party seeking relief must provide some basis for the court to believe the existence of facts sought is probable."[54]  Here, Plaintiffs base their discovery request on a medical record revealing that Bradley had not eaten and was vomiting eight days

---

[51] Doc. 47, p. 8 (quoting *Wolf v. United States*, 157 F.R.D. 494, 494 (D. Kan. 1994)).

[52] *Id*. at p. 9.

[53] *Crumpley v. Assoc. Wholesale Grocers, Inc.*, 2017 WL 1364839, at *7 (D. Kan. 2017) (citing Steven Gensler, *Federal Rules of Civil Procedure:  Rules and Commentary Rule 56*, Westlaw (Feb. 2017)).

[54] *Id*.  (internal quotation marks and citations omitted).

before being transferred to the hospital. They have also provided eight different categories of documents, including but not limited to Special Housing Unit Lieutenant Logs, correctional officer notes, and incident reports related to Bradley's December 2015 hospitalization, that they believe would provide information regarding Bradley's activities and health before his January 11 transfer to the hospital. Plaintiffs claim that these documents contain information allowing them to controvert Defendants' declarations that Bradley showed no sign of illness before January 11. Finally, Plaintiffs argue that additional discovery would provide the names of witnesses who may have relevant information, including those correctional officers who guarded Bradley before his death.

Defendants argue that Bradley's illness history, as reported in the record, is of "questionable voracity" and that a single medical record stating that he reported vomiting for eight previous days does not support an inference that Defendants were aware of his medical condition before January 11. Defendants point to Dr. Aulepp's declaration which shows that at one point in early 2014, Bradley reported weight loss but then recanted on this condition at a later date. Furthermore, Defendants' sworn declarations state that Bradley did not raise any issues to medical staff until January 11, when he reported generalized nausea, weakness, and vomiting to Dr. Alexander. According to Defendants, a medical record of questionable accuracy does not supply probable facts to overcome qualified immunity and subject them to discovery.

Contrary to Defendants' argument, the fact that Bradley reported that he was vomiting for eight days before January 11 supports an inference that Defendants may have been aware of his condition and ignored it. Moreover, Defendants' argument appears to ask the Court to weigh the evidence and conclude that there is no evidentiary value in those records that support Plaintiffs' claims. This is not the appropriate time for the Court to conduct such analysis.

Plaintiffs have not set forth a concise list of facts they will use to overcome summary judgment, but they have provided sufficient information for the Court to conclude that they have satisfied the first factor. In addition to the medical record stating that Bradley was vomiting for eight days prior to his hospitalization, Plaintiffs have provided an extensive list of documents that they believe contains information concerning Bradley's activities and health during his incarceration and Defendants' knowledge of his medical condition before his hospitalization. Moreover, this does not seem to be the type of case where a precise list of probable facts is available. Bradley is deceased. Plaintiffs have no other person or entity other than Defendants from which to obtain information regarding what occurred during his incarceration. Accordingly, the Court concludes that Plaintiffs have satisfied the first factor.

**B.     Factors Two and Three: Why Those Facts Cannot Be Presented Currently and What Steps Have Been Taken to Obtain Those Facts**

Plaintiffs have explained in great detail why the facts they seek cannot be currently presented and what steps they have taken to obtain those facts. No discovery has been conducted in this case. When Plaintiffs moved for limited discovery before Defendants filed an Answer, the Court denied their request. After Defendants filed their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, Defendants moved to stay all discovery. The Court recently denied that motion, but the record indicates that the parties have not served any discovery requests or Rule 26(a) disclosures.

In addition, Plaintiffs filed a FOIA request seeking all records connected with Bradley, including any medical records, activity records, and documents prepared by Bradley, correctional facility officers, personnel, social workers, and medical personnel. The Bureau of Prison's response was a partial release of records. Of the 319 pages that Plaintiffs received, 136 pages

were records from St. Luke's Hospital, which Plaintiffs were able to obtain on their own. Most importantly, Bradley is deceased. He cannot controvert Defendants' declarations with his side of the events. Defendants are truly the only parties that have access to the information Plaintiffs' seek.[55] Therefore, the Court finds that Plaintiffs have satisfied the second and third factors.

## C. Factor Four: How Additional Time Will Enable the Plaintiffs to Obtain Facts and Rebut the Motion for Summary Judgment

Plaintiffs seek additional time for the case to go through the normal discovery process before responding to Defendants' summary judgment motion. Plaintiffs claim that they need the ability to work through discovery to appropriately determine what occurred between the time Bradley returned from his first hospitalization on December 16 to the time he was transferred to St. Luke's hospital on January 11. The Court agrees. Because Defendants have asserted the defense of qualified immunity, Plaintiffs must show that Defendants violated Bradley's Eighth Amendment rights. To meet this burden, Plaintiffs must present sufficient evidence to show a genuine issue of material fact regarding whether Defendants were deliberately indifferent to Bradley's medical condition. Because Bradley is not here to state what actions he took and what actions Defendants took, Plaintiffs need additional time to come forward with evidence showing that Defendants were aware of his condition and did not provide care. Therefore, Plaintiffs have satisfied the fourth factor.

Overall, Plaintiffs have satisfied the four requirements imposed on a party seeking relief under Rule 56(d). In addition, Plaintiffs have demonstrated a connection between the information they seek and the validity of Defendants' qualified immunity assertion. Plaintiffs

---

[55] Defendants argue that it is irrelevant whether they are the ones with access to the information Plaintiffs seek and cite *Jones* and *Gutierrez* in support of this argument. These cases, however, are distinguishable from this case because neither involved a deceased plaintiff who could not provide any information regarding the events at issue.

are entitled to conduct discovery before the Court rules on Defendants' summary judgment motion. Therefore, the Court grants Plaintiffs' Rule 56(d) motion and denies Defendants' motion for summary judgment. But it does so without prejudice to Defendants refiling such a motion.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 25) is **GRANTED IN PART AND DENIED IN PART**. Defendant Maye is dismissed from this lawsuit. Defendants' Motion for Summary Judgment is denied without prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Defer Ruling on Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Doc. 39) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 27th day of September, 2017.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE